**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **HASINA M.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-3494** |
| **FRANK J. BISIGNANO,** **Social Security Commissioner,** | * | |
| | * | |
| **Defendant.** | * | |

**MEMORANDUM OPINION**

On October 24, 2025, Plaintiff Hasina M. petitioned this Court to review the final decision of the Social Security Administration (SSA or Commissioner) denying her claim for benefits.[1] ECF No. 1.[2] Pending before the Court is Plaintiff's appeal, which is fully briefed. ECF Nos. 13, 15, 17. No hearing is necessary. Local Rule 105.6 (D. Md. Dec. 1, 2025). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, and for the reasons set forth below, the Commissioner's decision is affirmed.

## I. BACKGROUND

### A. Procedural History

On July 16, 2020, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (the Act),

---

[1] This case was referred to a United States Magistrate Judge with the parties' consent. ECF Nos. 4, 6–7; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).

[2] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

42 U.S.C. § 401 *et seq.* and 42 U.S.C. § 1381 *et seq.*, alleging a disability onset date of April 1, 2019. ECF No. 9-1 at 108, 124, 139, 141. After the SSA denied Plaintiff's application for benefits, she sought reconsideration and the SSA affirmed its initial determinations on February 2, 2022. *Id*. at 143–144, 160, 200. Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on January 11, 2023. *Id.* at 54–87, 211. On April 13, 2023, the ALJ rendered a decision in which he found that Plaintiff was not disabled within the meaning of the Act. *Id*. at 160–175. Plaintiff requested further review and on March 15, 2024, the Appeals Council vacated the decision and remanded the case. *Id*. at 185–186. The ALJ held another hearing and rendered a second decision on November 13, 2024, in which he again found that Plaintiff was not disabled. *Id.* at 30–45, 88–106. Plaintiff requested further review, which the Appeals Council denied on September 8, 2025. *Id.* at 7, 13. The ALJ's November 13, 2024 decision therefore constitutes the final, reviewable decision of the SSA. *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

**B. Statutory Framework**

The Act authorizes disability insurance benefit payments to every insured individual who "is under a disability." *Cleveland* v. *Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801 (1999) (quoting 42 U.S.C. § 423(a)(1)). The Act also authorizes Supplemental Security Income payments to "persons who have a 'disability.'"[3] *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003). Both of these programs define "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

[3] The primary difference between these two disability benefit programs is the applicant's employment history and financial resources. *Delk* v. *Colvin*, 675 Fed. Appx. 281, 282 (4th Cir. 2017) (explaining that the Disability Insurance Program provides benefits to individuals "who have contributed to the program while employed," whereas Supplemental Security Income provides benefits based on financial need); *see also* 42 U.S.C. §§ 423(a)(1), 1381a, 1382.

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Federal regulations require the ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520; 416.920. Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps of the inquiry." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted). If the claimant satisfies step three, there is "an automatic finding of disability," which "relieves the decision maker from proceeding to steps 4 and 5." *Patterson* v. *Commissioner of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e); 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Residual functional capacity is defined as "the most [the claimant] can still do despite [their physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The ALJ then uses its residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. §§ 404.1520(e); 416.920(e); *Monroe*, 826 F.3d at 179.

### C. The ALJ's Decision

The ALJ initially determined that Plaintiff met the insured status requirements of the Act through December 31, 2022. ECF No. 9-1 at 33. At step one of the five-step sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2019, the alleged onset date. *Id*. At step two, the ALJ found that Plaintiff had multiple severe impairments, including several cardiovascular impairments, as well as non-severe impairments that did not result in more than a minimal limitation in her ability to perform basic, work-related activities.[4] *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 34. In evaluating Plaintiff's cardiovascular impairments, the ALJ considered Listings 4.02 (chronic heart failure), 4.04 (ischemic heart disease), 4.05 (recurrent arrhythmias), 4.06 (symptomatic congenital heart disease), and 4.11 (chronic venous insufficiency). *Id*.; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 4.02, 4.04–4.06, 4.11; Soc. Sec. Admin., *Disability Evaluation Under Social Security (Blue Book- October 2008): 4.00 Cardiovascular System – Adult*, https://perma.cc/74R7-CQZ2 (last visited Oct. 5, 2026).

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work with exertional and non-exertional capacity

[4] The Administrative Law Jude (ALJ) found that Plaintiff had the following severe impairments: degenerative disc disease. centrilobular emphysema, bullous disease, chronic obstructive pulmonary disease, hypertension, hyperlipidemia and coronary artery disease, rheumatic heart disease, status-post mitral and aortic bioprosthetic valve replacements and redo sternotomy, congestive heart failure, status-post redo non-ST elevation myocardial infarction, May-Thurner syndrome, status-post venoplasty, left common iliac vein stent graft and inferior vena cava filter, major depressive disorder, an anxiety-related disorder, and substance use disorder. ECF No. 9-1 at 33.

limitations.[5] ECF No. 9-1 at 38. In reaching this determination, the ALJ considered Plaintiff's history of cardiovascular disease and related medical testing and treatment. *Id*. at 38– 40. The ALJ also acknowledged Plaintiff's possible need for another aortic valve replacement and her cardiologist's assessment that her "long-term prognosis was guarded." *Id*. at 40. The ALJ considered Plaintiff's New York Heart Association (NYHA) classifications, noting that earlier records characterized her condition as Class I and later records as Class II.[6] *Id*. at 40. The ALJ concluded that this change represented a deterioration from "no limitation" to "slight/mild" limitation in functioning but did not warrant additional restrictions beyond those contained in his residual functional capacity determination. *Id.*

At step four, the ALJ found that Plaintiff had no past relevant work. *Id*. at 43. At step five, relying on the vocational expert's testimony and considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, including final assembler,

---

[5] "Exertional capacity . . . defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed. Reg. 34,474-01, 34,477 (July 2, 1996). "Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength," such as stooping, climbing, reaching, seeing, hearing, speaking, understanding and remembering instructions, and tolerance of temperature extremes. *Id.*

[6] The New York Heart Association functional classification system places patients with heart disease in one of four classes based on how much their symptoms limit physical activity. Am. Heart Ass'n, *Classes and Stages of Heart Failure*, https://perma.cc/5HHZ-TFH4 (last visited Oct. 5, 2026). Class I indicates "no limitation of physical activity", meaning "ordinary physical activity does not cause" undue fatigue, palpitation, or dyspnea (shortness of breath). *Id.* Class II indicates "slight limitation of physical activity," meaning the patient is "comfortable at rest" but "ordinary physical activity results" in fatigue, palpitation, or dyspnea. *Id.* Class III indicates "marked limitation of physical activity," meaning the patient is comfortable at rest, but "less than ordinary activity" causes those symptoms. *Id.* Class IV indicates that the patient is unable to carry on any physical activity without discomfort and may experience symptoms even at rest. *Id.*

dowel inspector, table worker, and eyeglass polisher. *Id*. at 44–45. Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Act, from April 1, 2019, through November 13, 2024, the date of the decision. *Id*. at 45.

## II. DISCUSSION

On appeal, Plaintiff argues that proposed Listing 4.07 (aortic valvular disease) reveals that the ALJ fundamentally misunderstood the severity of her aortic valve disease and that his characterization of her cardiac impairments as "fairly mild" is not supported by substantial evidence. ECF No. 13 at 11–12. The Commissioner argues the opposite. ECF No. 15 at 6–10. Following discussion of the applicable standard of review, the parties' arguments are addressed below.

### A. Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)). The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id*.; *accord Mascio*, 780 F.3d at 634; *Coffman* v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Factual findings supported by substantial evidence "shall be conclusive." 42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence."). The phrase "substantial evidence" is a "term of art" that "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek* v. *Berryhill*, 587 U.S. 97, 102-103 (2019) (internal quotation marks and citations omitted). It is "more than a mere scintilla . . . [and] somewhat less than a preponderance." *Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). The "threshold

for such evidentiary sufficiency is not high." *Biestek*, 587 U.S. at 103. In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997). "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record." *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

**B. Listing 4.07 and the ALJ's Evaluation of Medical Evidence**

At step three, the ALJ evaluated Plaintiff's cardiovascular impairments under the listings applicable at the time of the decision, including Listings 4.02, 4.04, 4.05, 4.06, and 4.11. ECF No. 9-1 at 34. Plaintiff does not argue that her impairments met one of these listings or that the ALJ failed to consider a different listing. Rather, Plaintiff contends that this Court should consider the SSA's "Revised Medical Criteria for Evaluating Cardiovascular Disorders," which includes Listing 4.07 (applicable to aortic valvular disease, Plaintiff's specific condition), when evaluating whether the ALJ erred in evaluating medical evidence. ECF No. 13 at 11–12. Plaintiff posits that the medical criteria underlying the proposed listing provide context for understanding the severity of her aortic stenosis and demonstrate why the ALJ's characterization of her cardiac impairments as "fairly mild" was not supported by substantial evidence. *Id.*

The SSA first proposed the revised cardiovascular criteria in a notice of proposed rulemaking published on June 29, 2022, and published the final rule on July 2, 2026. *Revised Medical Criteria for Evaluating Cardiovascular Disorders* (*Revised Criteria*), 91 Fed. Reg. 40,804, 40,804 (July 2, 2026). The final rule, which revises the listings used to evaluate cardiovascular disorders and adds new Listing 4.07 for aortic valvular disease, takes effect on October 30, 2026. *Id.* at 40,804, 40,806. As Plaintiff acknowledges, Listing 4.07 was not in

effect at the time of the ALJ's November 13, 2024 decision. ECF No. 13 at 11–12. The SSA's promulgation of new criteria does not establish that the ALJ applied an incorrect legal standard in evaluating Plaintiff's claim, regardless of whether Plaintiff would have met the listing had it been in effect at the time of the ALJ's decision. *Kiser* v. *Saul*, 821 Fed. Appx. 211, 213 n.1 (4th Cir. 2020) ("[T]he version of the listings in effect as of the date of the Commissioner's final decision controls."); *see also Revised Criteria*, 91 Fed. Reg. at 40,804 n.10 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Plaintiff's reliance on the proposed listing is therefore relevant only if it informs an evaluation of whether the ALJ mischaracterized the medical evidence regarding Plaintiff's aortic stenosis. The undersigned therefore turns to the ALJ's evaluation of the medical evidence to determine whether his assessment of Plaintiff's cardiac impairments is supported by substantial evidence.

Plaintiff argues that the ALJ improperly interpreted the medical evidence when he characterized her cardiac impairments as "fairly mild." ECF Nos. 13 at 11–12; 17 at 2. Read in context, however, the ALJ's decision does not reflect a finding that Plaintiff's aortic stenosis itself was medically mild. ECF No. 9-1 at 40. Rather, the ALJ separately considered the severity of Plaintiff's underlying cardiac disease and the degree of functional limitation resulting from that disease. *Id*. In evaluating Plaintiff's cardiac functioning, the ALJ noted that her cardiologist classified her cardiovascular condition as NYHA Class I in April 2021. *Id*. The ALJ explained that this classification indicated that ordinary physical activity did not result in undue fatigue, dyspnea, or palpitations. *Id*. The ALJ also acknowledged Plaintiff's April 2022 non-ST elevation myocardial infarction and hospitalization and noted that, by December 2022, treatment records classified her heart failure as NYHA Class II. *Id*. The ALJ recognized that the progression from Class I to Class II was a deterioration in Plaintiff's functioning but explained

that Class II reflected "mild" or "slight" functional limitation. *Id*. Accordingly, the ALJ determined that this deterioration did not warrant limitations beyond those incorporated into his residual functional capacity determination. *Id.* at 43. The ALJ also considered Plaintiff's more recent and significant cardiac evidence. Specifically, the ALJ acknowledged Plaintiff's severe dyspnea on exertion, symptoms suggestive of paroxysmal nocturnal dyspnea, and the possibility that she may require another aortic valve replacement. *Id*. at 40. The ALJ further discussed the September 2024 echocardiogram showing severe stenosis of the bioprosthetic aortic valve, moderate-to-severe stenosis of the bioprosthetic mitral valve, severe tricuspid regurgitation, mild global left ventricular hypokinesis, and an ejection fraction of approximately 45 to 50 percent. *Id*. The ALJ also acknowledged that Plaintiff's cardiologist described her "long-term prognosis as guarded." *Id*.

Thus, this is not a case in which the ALJ independently reviewed Plaintiff's echocardiograms and concluded that medically documented severe aortic stenosis was "mild." On the contrary, the ALJ expressly acknowledged the severe stenosis and other significant cardiac findings and then evaluated their functional consequences after considering the medical record. *Id*. at 38–43. The ALJ relied upon medical evidence concerning Plaintiff's functional capacity, including the NYHA classifications contained in her treatment records, when determining the extent to which her cardiovascular impairments affected her ability to work. *Id*. at 40. Although the phrase "fairly mild cardiac impairments," *id.* at 43, standing alone, could be read as minimizing the seriousness of Plaintiff's underlying cardiac disease, the ALJ's surrounding discussion makes clear that the characterization was in terms of the degree of functional limitation reflected by the medical evidence, particularly the NYHA classifications. In making this characterization, the ALJ did not independently draw medical conclusions from raw medical evidence but properly evaluated and weighed medical evidence. To be sure, an ALJ

may not "play the role of doctor and interpret medical evidence when he or she is not qualified to do so," but "the weighing of various evidence is precisely the typical province of the ALJ." *Marshall* v. *Berryhill*, Civil Action No. TMD-16-62, 2017 WL 1196488, at *4 (D. Md. Mar. 31, 2017) (internal quotation marks and citations omitted). Plaintiff's disagreement with the ALJ's decision does not permit this Court to reweigh the evidence or substitute its judgment for that of the Commissioner where the ALJ's decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456.

The ALJ's residual functional capacity determination further demonstrates that he considered the functional effects of Plaintiff's cardiovascular impairments. A claimant's residual functional capacity, which represents the most a claimant can still do despite their limitations, must be based upon consideration of the relevant evidence in the record. 20 C.F.R. §§ 404.1545(a), 416.945(a). Here, the ALJ limited Plaintiff to a reduced range of sedentary work and imposed additional exertional and non-exertional capacity restrictions. ECF No. 9-1 at 38. In explaining those limitations, the ALJ considered Plaintiff's cardiovascular conditions together with her respiratory, spinal, and other impairments. *Id*. The ALJ restricted Plaintiff from climbing ladders, ropes, or scaffolds and limited her climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. *Id*. He also restricted Plaintiff's exposure to extreme temperatures, wetness, humidity, excessive vibration, pulmonary irritants, poorly ventilated areas, hazardous machinery, and unprotected heights. *Id*. In particular, the ALJ explained that the combination of Plaintiff's spinal, cardiovascular, and respiratory conditions precluded her from climbing ladders, ropes, or scaffolds. *Id*. Thus, the decision reflects that the ALJ considered Plaintiff's cardiovascular disease not just as a diagnosis, but in determining the work-related restrictions warranted by the record.

Plaintiff points to evidence demonstrating serious cardiac disease, including severe aortic stenosis, multiple valve replacement surgeries, dyspnea, and the possible need for another valve replacement. ECF No. 13 at 3–7. But the presence of significant medical findings does not itself establish that the residual functional capacity determination failed to account for the functional limitations resulting from those impairments. *Gross* v. *Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam) (affirming denial of benefits and explaining that a diagnosed impairment "is not necessarily disabling" because "[t]here must be a showing of related functional loss") (citation omitted). Plaintiff does not identify an additional work-related limitation that the ALJ was required to include in her residual functional capacity, nor does she identify a medical opinion requiring functional restrictions more than those evaluated by the ALJ. Instead, her challenge principally concerns the ALJ's characterization of the cardiac evidence.

The Court's task is not to determine whether the evidence could support a different conclusion. Where conflicting evidence permits reasonable minds to differ, the responsibility for resolving those conflicts rests with the ALJ. *Hays*, 907 F.2d at 1456. Substantial evidence requires "more than a mere scintilla" but may be less than a preponderance, and the evidentiary threshold "is not high." *Biestek*, 587 U.S. at 102–03 (internal quotation marks and citation omitted). Here, the ALJ's decision, which considered the entirety of cardiac evidence, explained his reliance on the medical evidence concerning Plaintiff's functional limitations, and incorporated restrictions based on that evidence, is supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. A separate Order follows.

Date: October 5, 2026

/s/
Erin Aslan
United States Magistrate Judge